UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BFI WASTE SYSTEMS OF NORTH
AMERICA LLC,

             Plaintiff,

v.

FREEWAY TRANSFER, INC.,

             Defendant.

Case No. 10-CV-4358 (PJS/TNL)


FINDINGS OF FACT
AND VERDICT

Daniel Q. Poretti and Katie M. Connolly, NILAN JOHNSON LEWIS P.A., for plaintiff.

Kevin D. Hofman and Daniel S. Schleck, HALLELAND HABICHT P.A., for defendant.

In November 2003, plaintiff BFI Waste Systems of North America LLC ("BFI") and defendant Freeway Transfer, Inc. ("Freeway") signed a letter agreement, which took effect in March 2010.  Under the letter agreement, BFI agreed to make certain payments to Freeway in return for the right to drop off up to 250 tons of garbage per day at the transfer station owned by Freeway.  The fourth numbered paragraph of the letter agreement also gave BFI the right to declare its payment obligations null and void upon the occurrence of any of four conditions:

> Freeway and BFI agree that [BFI's payment obligations under] this letter agreement will be null and void [1] in the event of the imposition of flow control or other regulatory changes which make the operation of the Freeway Transfer Station economically not viable; [2] if a tax is imposed which also makes the operation of the Freeway Transfer Station as outlined above financially not viable, or [3] BFI's landfill located in or about Sarona, Wisconsin ("Lake Area Disposal") closes for any reason, or [4] its ability to accept municipal solid waste is significantly reduced by virtue of changes to existing regulations, laws or taxes.

McGowan Aff. Ex. C at ¶ 4, December 30, 2011 [ECF No. 42-3] (bracketed numbers added for clarity).  The Court will refer to each of the four conditions that allowed BFI to declare its payment obligations null and void as a "cancellation clause."

On September 1, 2010, BFI notified Freeway that, pursuant to the fourth cancellation clause, it was declaring its payment obligations null and void.  Freeway disputed BFI's right to stop making payments, contending that the ability of the Sarona landfill to accept municipal solid waste had not been significantly reduced as a result of changes in regulations, laws, or taxes.  BFI eventually filed this lawsuit, asking the Court to declare that BFI properly terminated its payment obligations under the contract.  Freeway counterclaimed, asking the Court to find that BFI breached the contract.

The case was tried to a jury, and the jury returned its verdict on October 15, 2012.  The jury found, in essence, that BFI had the right to declare its payment obligations null and void, that BFI did not waive that right, and that BFI therefore did not breach the contract.  The jury also found that, prior to the time that BFI declared its payment obligations null and void, BFI had paid less to Freeway than the contract required.  That essentially disposed of Freeway's legal claims against BFI.  But Freeway also asserted an equitable claim      specifically, a claim for reformation of contract      and Freeway's equitable claim must now be decided by the Court, based on the evidence that it heard during the trial.

As noted above, the fourth numbered paragraph of the 2003 letter agreement gave BFI the right to declare its payment obligations null and void upon the occurrence of any of four conditions.  But that same paragraph limited BFI's right to cancel the contract in an important respect:

> BFI agrees that it will not declare the operation of the Freeway
> Transfer Station economically "unviable" unless it has also ceased
> municipal solid waste transfer operations at any other BFI transfer
> station facility located within 30 miles of the Freeway Transfer
> Station including the Eden Prairie BFI transfer facility currently
> under construction. . . . In the event that BFI re-opens, builds,
> manages or operates any transfer station within a 30-mile radius of
> the Freeway Transfer Station after declaring the operations of the
> Freeway Transfer Station economically unviable, BFI agrees to
> continue or resume operations at the Freeway Transfer Station . . . .

McGowan Aff. Ex. C at ¶ 4.

Throughout this litigation, Michael McGowan, President of Freeway, has insisted that this provision required BFI to close its Eden Prairie Transfer Station if it declared its payment obligations to Freeway null and void for *any* reason, not just if it declared the operation of the Freeway Transfer Station to be economically or financially unviable. The Court rejected McGowan's position when it ruled on the parties' cross-motions for summary judgment in April 2012. As the Court said at that time, McGowan's "interpretation cannot be reconciled with the plain language of Paragraph 4," which is "crystal clear" in providing that "BFI is only required to close its Eden Prairie Transfer Station if it declares the operation of the Freeway Transfer Station to be economically unviable     that is, if it invokes the first or second cancellation clause." Mem. Op. & Order at 13 [ECF No. 80].

In the alternative, however, Freeway argues that both parties *intended* to require BFI to close its Eden Prairie Transfer Station if it invoked any of the four cancellation clauses; that the 2003 letter agreement failed to say this because of a mutual mistake; and that the Court should therefore reform the contract. Under Minnesota law, "[a] party seeking reformation must prove that: '(1) there was a valid agreement between the parties expressing their real intentions; (2) the

written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties . . . .'" *SCI Minn. Funeral Services., Inc. v. Washburn-McReavy Funeral Corp.*, 795 N.W.2d 855, 865 (Minn. 2011) (quoting *Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn. 1980)).  The party seeking reformation must "establish these elements through 'evidence which is clear and consistent, unequivocal and convincing.'"  *Id*.

Freeway's reformation claim is certainly supported by substantial evidence.  The 2003 contract was negotiated by two individuals and two individuals only: McGowan (on behalf of Freeway) and Paul Rosland (on behalf of BFI).  Both McGowan and Rosland testified at trial that, notwithstanding what they wrote in the letter agreement, they agreed that BFI would have to close its Eden Prairie Transfer Station if it invoked any of the four cancellation clauses.  Both also testified that the failure of the letter agreement to state that intention was a result of mutual mistake.  Despite this testimony, the Court finds that Freeway has not met its high burden of proof.

To begin with, neither McGowan nor Rosland is a disinterested witness.  McGowan, obviously, is not disinterested, as he owns and operates Freeway.  McGowan's demeanor at trial made clear that he is emotionally invested in this case to a significant extent.  This is understandable, as it appears that, without the payments from BFI, McGowan may well lose his family business.  Rosland's neutrality is also in question, given that he was fired by BFI in 2006 and now runs a business that directly competes with BFI.

Having closely observed the two men testify at trial, the Court does not believe that either man was lying.  But the Court also does not believe that the men's testimony is entitled to much weight.  As noted, McGowan is quite emotionally invested in this case, and that emotional

-4-

investment seemed to affect his testimony.  For example, McGowan continued to insist that the 2003 letter agreement required BFI to close its Eden Prairie Transfer Station if it declared its payment obligations to Freeway null and void for *any* reason, even though the letter agreement is so clearly to the contrary that not even McGowan's lawyers have been willing to advocate his position.  Moreover, McGowan seemed to surprise both opposing counsel and his own attorneys when he denied other obvious facts     such as that he had authored certain provisions of the letter agreement     even though he had admitted those same facts at his deposition.  Again, the Court does not believe that McGowan said anything that he knew to be false, but the Court also does not regard McGowan's testimony as particularly objective or reliable.

Likewise, the Court does not believe that Rosland said anything that he knew to be false. But it appeared that Rosland had not been attentive to detail when he was negotiating the 2003 contract with McGowan, and Rosland now has a poor memory of those negotiations.  Rosland's testimony was, on the whole, vague, equivocal, and contradictory.  He would sometimes contradict himself in the course of a one- or two-sentence answer, and often his answers would tail off into vague mumbling.  It would be difficult for anyone who observed Rosland testify to place a great deal of confidence in his testimony.

What the testimony at trial did make clear is that, in negotiating the 2003 contract, McGowan and Rosland exchanged multiple drafts, and McGowan read each draft with care with so much care, in fact, that he corrected punctuation and capitalization errors.  This evidence gives even more force to the skepticism expressed by the Court when it denied the parties' cross-motions for summary judgment:

It is not hard to believe two individuals who sign a written contract calling for the sale of a home located at "11144 East Superior Street, Duluth, Minnesota" when they later testify that they actually agreed on the sale of a home located at "1144 East Superior Street, Duluth, Minnesota."  But it is very hard to believe two individuals who sign a written contract calling for the sale of a home located at "11144 East Superior Street, Duluth, Minnesota" when they later testify that they actually agreed on the sale of "Madison Square Garden, New York, New York."

As noted, Paragraph 4 of the BFI-Freeway contract describes four events that allow BFI to void its payment obligations.  Two of those events relate to the economic viability of the Freeway Transfer Station, and two of those events relate to the Sarona landfill.  Paragraph 4 then goes on to tie the closing of the Eden Prairie Transfer Station to the economic viability of the Freeway Transfer Station     and Paragraph 4 does this not once, but twice.  Paragraph 4 does not so much as hint that the closing of the Eden Prairie Transfer Station has any connection to the Sarona landfill, which only makes sense:  After all, the Freeway Transfer Station and the Eden Prairie Transfer Station are both *transfer stations* and are about 10 miles apart, while the Sarona landfill is a *landfill* that is about 150 miles from the Eden Prairie Transfer Station.  It is logical to tie the closing of the Eden Prairie Transfer Station to a declaration by BFI that its use of the nearby Freeway Transfer Station is not economically viable; it is considerably less logical to tie the closing of the Eden Prairie Transfer Station to events affecting a landfill that is almost 150 miles away.

In short, it is difficult to believe McGowan and Rosland when they allege that they agreed to tie the closure of the Eden Prairie Transfer Station not just to a declaration regarding the economic viability of the Freeway Transfer Station, but also to events at the Sarona landfill, and that the contract does not say this because they both made a "mistake."  It is also difficult to believe that neither of these sophisticated businessmen negotiating a multimillion dollar contract happened to notice this "mistake," despite the fact that it appears twice in a two-page contract, and despite the fact that they exchanged drafts of the contract on several occasions.

Mem. Op. & Order at 15-16.

In light of the evidence introduced at trial about the care with which McGowan reviewed the various drafts of the letter agreement, it is even more difficult for the Court to believe that McGowan and Rosland made a "mistake," as Freeway now alleges.  It is simply not credible that McGowan attended to the smallest details of the 2003 letter agreement (such as matters of punctuation and capitalization), but failed to notice that the letter agreement omitted what McGowan says was one of the most important parts of the contract     namely, that BFI would have to close its Eden Prairie Transfer Station if it declared the contract null and void for *any* reason.

Although reformation is an equitable remedy entirely within the discretion of the Court, the Court     with the agreement of the parties     asked for an advisory verdict from the jury on Freeway's reformation claim.  The jury found that Freeway had *not* "proved, by clear, consistent, unequivocal, and convincing evidence, that BFI and Freeway reached an oral agreement that BFI would have to stop operating the Eden Prairie Transfer Station if it declared its obligations to Freeway under the 2003 letter agreement to be null and void for *any* reason." ECF No. 142.  For the reasons described above, the Court agrees with the jury, and thus will enter judgment for BFI on Freeway's reformation claim.

## VERDICT

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court HEREBY FINDS THAT Freeway did not prove by clear, consistent, unequivocal, and convincing evidence that the parties agreed that BFI would have to stop operating its Eden Prairie transfer facility if BFI declared its obligations under the contract null and void for any

reason.  As a result, the November 11, 2003 contract will not be reformed on grounds of mutual

mistake of the parties.

Dated: October 22 , 2012

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge